UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14290-CIV-ALTMAN

**KENNETH W. POLLARD**,

   *Petitioner*,

v.

**DEPARTMENT OF CORRECTIONS**,

   *Respondent.*
_____/

## **ORDER**

The Petitioner, Kenneth W. Pollard, was convicted and sentenced in state court for unlawfully procuring and using the personal identification information of another person. *See* Judgment [ECF No. 9-1] at 27. In his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, Pollard advances one ground for relief: The state trial court (he says) "[f]ailed to conduct a competency hearing before trial and failed to enter an order finding [Pollard] competent." Petition [ECF No. 1] at 6. After careful review, we **DENY** the Petition because the state court reasonably applied "clearly established federal law" and didn't base its decision "on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)–(2).

### **THE FACTS**

The State charged Pollard by Information with eight crimes: fraudulently obtaining a driver's license (Count 1), forgery (Count 2), perjury (Count 3), and five counts of unlawfully using another person's identification information (Counts 4–8). *See* Information [ECF No. 9-1] at 10–11. The State alleged that Pollard obtained and used a driver's license bearing the name of "Neely Johnson." *See ibid.* Shortly before trial, the State *nolle prossed* "in open court" Counts 2 and 3. *Id.* at 10.

On October 27, 2014, Pollard's court-appointed counsel filed a motion under FLA. R. CRIM. P. 3.210(b), asking for Pollard's competence to be evaluated by an independent expert. *See* Motion for Examination of Defendant [ECF No. 9-1] at 13. The state court granted the motion and ordered "Shanlis Counseling and Assessment" to determine whether "the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding"—and, if not, to "report on any recommended treatment for the defendant to attain competency to proceed." Order Directing Examination [ECF No. 9-1] at 15–16. Although Dr. Theodore Williams assessed Pollard's competency on November 4, 2014, *see* 2014 Competency Evaluation [ECF No. 17-1] at 1, his report was never docketed and no post-evaluation competency hearing ever took place, *see Pollard v. State*, 254 So. 3d 984, 985 (Fla. 4th DCA 2018) ("[T]he record does not indicate that any competency hearing was held prior to trial, nor does the record contain any competency evaluation conducted by the appointed expert prior to the trial or an order determining Pollard's competence prior to trial.").

Despite the unsettled question of Pollard's competency, the judge empaneled a jury—which, on October 27, 2016, found Pollard guilty of all remaining counts. *See* Verdict [ECF No. 9-1] at 19–20. Pollard's sentencing hearing was originally scheduled for January 24, 2017, but the judge cut the hearing short and *sua sponte* ordered a new competency evaluation after Pollard continued to insist that his name was Neely Johnson. *See* Sentencing Day 1 Hr'g Tr. [ECF No. 10-2] at 28 ("I'm gonna go ahead and [o]rder an evaluation to make sure everything's—everything in the record is totally clear."); *see also* Order Directing Updated Examination [ECF No. 9-1] at 22–25. On March 31, 2017, Dr. Williams evaluated Pollard again and concluded that "Pollard is competent to proceed." 2017 Competency Evaluation [ECF No. 15-1] at 5; *see also* Sentencing Day 2 Hr'g Tr. [ECF No. 10-2] at 24 ("[Defense Counsel:] I think, Judge, [Pollard] clearly manifested in the trial and again even here today that he is certainly competent, Judge. The biggest issue here is whether or not he is delusional in believing that he is Mr. Neely Johnson."). Now satisfied that Pollard was competent, the trial court

adjudicated Pollard guilty and sentenced him to three consecutive sixty-month prison terms on Counts 1, 4, and 5—followed by three consecutive five-year terms of probation as to Counts 6, 7, and 8. *See* Judgment and Sentencing Orders [ECF No. 9-1] at 27–43.

In his direct appeal to the Fourth DCA, Pollard argued that the "trial court reversibly erred when it failed to conduct a competency hearing before trial and [failed] to enter an order finding [Pollard] competent before trial." Direct Appeal Initial Brief [ECF No. 9-1] at 64. The State conceded that the trial court had "erred in failing to conduct a competency hearing" and suggested that the Fourth DCA "should remand for the trial court to determine if a retroactive determination of competency can be made." Direct Appeal Answer Brief [ECF No. 9-1] at 80. On September 5, 2018, the Fourth DCA adopted the State's position, agreeing that "the trial court erred in failing to conduct a competency hearing and to make a competency determination prior to trial, after previously ordering a competency evaluation," and remanded the case to see "if the trial court can make a *nunc pro tunc* finding as to appellant's competency based upon the existence of evaluations performed contemporaneous with trial and without relying solely on a cold record, and can do so in a manner which abides by due process guarantees[.]" *Pollard*, 254 So. 3d at 985–86 (quoting *Baker v. State*, 221 So. 3d 637, 641–42 (Fla. 4th DCA 2017)). If the trial court couldn't make a *nunc pro tunc* finding, the Fourth DCA instructed, then it should vacate Pollard's current conviction, "adjudicate his current competency, and, if he is competent, conduct a new trial on all counts." *Id.* at 986 (cleaned up).

The very next day, the state trial court held a hearing in accordance with the Fourth DCA's mandate. *See* Competency Hr'g Tr. [ECF No. 10-4] at 3 ("The Court: And, and basically [the Fourth DCA] want[s] me to do a competency *nunc pro tunc* hearing."). At that hearing, Pollard's lawyer explained that the expert had found Pollard competent *twice*. *See id.* at 4 ("[Defense Counsel:] Judge, before I got appointed on the case the Public Defender's Office had done an evaluation and it came back competent. . . . And, and during the course of the trial we had concerns and then at the sentencing

3

[the Court] had more concerns, so at the sentencing you appointed a doctor who did another competency evaluation."). Before adjourning the hearing, the trial court ordered the parties to "send me any reports you have[.]" *Ibid.*

On December 26, 2018, the trial court found *nunc pro tunc* that Pollard had been competent to stand trial. *See* Order Finding Defendant Competent [ECF No. 9-1] at 98–99. The court observed that an expert had *twice* found Pollard competent—once before trial and a second time before sentencing. *Id.* at 99. Plus, the court added, Pollard's behavior during his criminal case indicated that he "appeared to fully understand what was taking place in the courtroom . . . [and was] able to communicate and discuss all issues [with counsel] throughout the lengthy court proceedings." *Ibid.*

Pollard again appealed to the Fourth DCA[1]—this time, advancing four issues: (1) that "[t]he trial court violated both the rules governing competency determinations and [the Fourth DCA's] mandate by . . . failing to hold a competency hearing with Appellant[ ] presen[t] and failing to address whether a retroactive competency determination was possible," Second Direct Appeal Initial Brief [ECF No. 9-1] at 213; (2) that Pollard was entitled to a full resentencing hearing because he "was convicted of non-violent offenses and scored only 16.425 months as his lowest permissible sentence," *id.* at 223; (3) that the trial court failed to instruct the jury on the "lesser-included offense [of] unlawful possession of personal identification information of another person," *id.* at 241; and (4) that Pollard's "five counts of unlawful use of personal identification information [ ] occurred in only two criminal proceedings [and] violated double jeopardy," *id.* at 245. On June 10, 2021, the Fourth DCA summarily

---

[1] Before Pollard took this second appeal, his lawyer filed a "Motion to Reimpose Original Sentence" in the trial court, arguing that—before his appeal could proceed—the court had to "reimpos[e] the original conviction and sentence[.]" Motion to Reimpose Original Sentence [ECF No. 9-1] at 114 (quoting *Zieler v. State*, 276 So. 3d 835, 836 (Fla. 4th DCA 2019)). The trial court granted this motion and reimposed the same sentence on all counts. *See* New Judgment and Sentencing Orders [ECF No. 9-1] at 117–32.

affirmed the trial court in an unwritten opinion. *See Pollard v. State*, 320 So. 3d 163, 164 (Fla. 4th DCA 2021).

On July 8, 2021, Pollard—now proceeding *pro se*—filed a motion for postconviction relief under FLA. R. CRIM. P. 3.850.[2] *See* Postconviction Motion [ECF No. 9-2] at 109–23. In that motion, Pollard alleged that: (1) "[t]he trial court reversibly erred when it failed to conduct a competency hearing before trial and failed to enter an order finding [him] competent before trial," *id.* at 114; (2) the trial court imposed a vindictive sentence because "defendant [maintained] his innocence and insist[ed] upon a jury trial," *id.* at 116; (3) the trial court erred in "failing to instruct" the jury "on the category 1 necessarily-included offense for unlawful possession of personal 'ID' information," *id.* at 118; and (4) Pollard's conviction violated the Double Jeopardy Clause because he received "[m]ultiple convictions of identity theft stemming from the same common scheme," *id.* at 120. On December 9, 2021, the state postconviction court denied all four claims, *either* because they "lack[ed] merit" *or* because Pollard had improperly raised "claim[s] of trial court error [that are] not cognizable in a motion for post-conviction relief." Order Denying Postconviction Motion [ECF No. 9-3] at 232. Pollard filed a motion for rehearing, *see* Motion for Rehearing [ECF No. 9-3] at 235–45, but the state postconviction court summarily denied that motion on January 13, 2022, *see* Order Denying Motion for Rehearing [ECF No. 9-3] at 252. Rather than appeal the state postconviction court's decision, Pollard filed this Petition on August 9, 2022. *See* Petition at 16.

## THE LAW

I.   **The Antiterrorism and Effective Death Penalty Act ("AEDPA")**

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562

6

U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under § 2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute

that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007))). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II. AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

8

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the

9

state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

**ANALYSIS**

As we've said, Pollard's sole contention in this federal case is that the state trial court violated his Fourteenth Amendment rights when it "[f]ailed to conduct a competency hearing before trial and failed to enter an order finding [him] competent." Petition at 6. Although Pollard acknowledges (in his Reply) that the trial court "held a *nunc pro tunc* [hearing] to determine whether [he] was competent to proceed," he insists that this hearing didn't cure the original constitutional error because "you cannot try a defendant without the Court determining his competency first." Reply [ECF No. 11] at 2–3. In its Response, the Respondent *both* "concedes the petition appears to be timely," Response to Order to Show Cause ("Response") [ECF No. 8] at 6, *and* agrees that Pollard's claim "appears to be exhausted," *id.* at 7. Still, the Respondent maintains that, even though the state trial court "failed to

10

hold a pretrial competency hearing," this error didn't violate Pollard's constitutional rights because (1) "a *nunc pro tunc* evaluation was possible," and (2) there was never a "bona fide doubt as to the defendant's competency." *Id.* at 22–23 (quoting *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). Given the Respondent's decision to waive its procedural defenses, we'll move straight to the merits of the Petition.

Under AEDPA's deferential standard of review, we must assess the reasonableness of "the highest state court decision reaching the merits of a habeas petitioner's claim[.]" *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008). In this case, that's the Fourth DCA, which affirmed the state trial court's findings that (1) a *nunc pro tunc* competency evaluation was possible, and (2) Pollard was competent at the time of his trial. *See Pollard*, 320 So. 3d at 164. But, since the Fourth DCA issued only an "unexplained decision" that summarily affirmed the state trial court, we "'look through' the unexplained decision to the last-related state-court decision that does provide a relevant rationale." *Wilson*, 138 S. Ct. at 1192. And that, of course, is the state trial court's order finding (*nunc pro tunc*) that Pollard *had been* competent to proceed to trial. *See* Order Finding Defendant Competent [ECF No. 9-1] at 98–99.

"The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Watts v. Singletary*, 87 F.3d 1282, 1286 (11th Cir. 1996). A defendant is competent if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (cleaned up) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). A criminal defendant who is "tried and convicted while incompetent" may bring a "substantive claim of incompetency." *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992).

Pollard—as we know—advances a procedural due process claim based on the trial court's failure to hold a competency hearing before trial. *See* Petition at 6 ("The failure to conduct a competency hearing deprive[d] [Pollard] of his constitutional right to a fair trial[.]"); Reply at 2 ("The only claim the Petitioner presents in this petition is the fact that the trial court failed to find him competent to stand trial before proceeding to trial."). A criminal defendant has a procedural due process right to a competency hearing if there's "a bona fide doubt regarding [the defendant's] competency to stand trial." *James*, 957 F.2d at 1570; *see also Pate*, 383 U.S. at 386 ("Robinson's constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial[.]"). Although we don't have a comprehensive list of behaviors that automatically trigger a "bona fide doubt," the Supreme Court has advised trial courts to be mindful of "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial[.]" *Drope v. Missouri*, 420 U.S. 162, 180 (1975); *accord Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995). While there is "a rebuttable presumption of incompetency upon a showing by a habeas petitioner that the state trial court failed to hold a competency hearing," the petitioner still "bears the burden of showing that 'objective facts known to the trial court were sufficient to raise a bona fide doubt.'" *Medina*, 59 F.3d at 1106 (first quoting *James*, 957 F.2d at 1570; and then quoting *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979)).

One more thing before we address the merits of the Petition: A trial court's failure to hold a competency hearing can—in limited circumstances—be excused if the court holds "a *nunc pro tunc* competency hearing, so long as a reliable inquiry into the defendant's competency can still be made[.]" *Watts*, 87 F.3d at 1286 n.6. While the Supreme Court has "emphasized the difficulty of retrospectively determining an accused's competence to stand trial," *Pate*, 383 U.S. at 387, a *nunc pro tunc* competency hearing is permissible so long "as a meaningful inquiry" can be made into the defendant's competency, *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987); *see also Trueblood v. Inch*, 2021 WL 5041231, at

\*10 (N.D. Fla. Sept. 30, 2021) (Timothy, Mag. J.) ("No Supreme Court case has held nunc pro tunc competency determinations are per se violations of the Fourteenth Amendment[.]"), *report and recommendation adopted*, 2022 WL 487911 (N.D. Fla. Feb. 17, 2022) (Walker, C.J.). And, notably, the Florida Supreme Court has likewise held that a *nunc pro tunc* competency hearing doesn't offend due process so long as there are "a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial available to offer pertinent evidence at a retrospective hearing." *Dougherty v. State*, 149 So. 3d 672, 679 (Fla. 2014) (quoting *Mason v. State*, 489 So. 2d 734, 737 (Fla. 1986)).

It's undisputed that the state trial court erred—under both state and federal law—when it failed to address Pollard's competency *before* trial. *See Pollard*, 254 So. 3d at 985 ("The parties agree that the trial court erred in failing to conduct a competency hearing and to make a competency determination prior to trial, after previously ordering a competency evaluation."). The question here, then, is whether, on remand from the Fourth DCA, the state trial court reasonably concluded that (1) a *nunc pro tunc* competency determination was possible, *and* that (2) Pollard was, in fact, competent to stand trial.[3] We think the state trial court acted reasonably on both counts.

Recall that Pollard's competency was only ever an issue in this case because "the defendant continually denied being Kenneth Pollard and kept insisting that his true name is the exact same as the victim in this case [Neely Johnson]." Order Finding Defendant Competent [ECF No. 9-1] at 99. In assessing Pollard's competency *nunc pro tunc*, the state trial court relied on the following facts:

---

[3] To the extent Pollard is claiming that a court cannot hold a *nunc pro tunc* competency hearing without violating the defendant's due-process rights, we reject his argument in light of what our Circuit has said on this issue. *See Watts*, 87 F.3d at 1286 n.6 ("[T]he state may still attempt to prove that the defendant was in fact competent at the time of trial at a *nunc pro tunc* competency hearing[.]"); *Trueblood*, 2021 WL 5041231, at \*10 ("No Supreme Court case has held nunc pro tunc competency determinations are per se violations of the Fourteenth Amendment, although the Court has recognized difficulties inherent in making such determinations." (citing *Pate*, 383 U.S. at 387)).

13

> The court makes this finding relying upon extensive dialogue with and observations of the defendant (with his attorney) throughout the pre-trial hearing; further observations of and discussions with the defendant (with his attorney) during the multi day jury trial held in October, 2016 and further observation of and discussions with the defendant (with his attorney) at sentencing in May, 2017. In addition, the Court relies upon the competency evaluation done by Dr. Theodore G. Williams dated November 14, 2014 and the update of this competency evaluation by Dr. Theodore G. Williams based upon the doctor meeting with the defendant again on March 31, 2017 (prior to sentencing). The Court independently finds based upon the aforementioned that the Defendant was mentally competent to proceed at trial[.]

*Id.* at 98. In sum, the state judge found, based on his own observations of Pollard's behavior—and in light of Dr. Williams's extensive evaluations—that Pollard *was* competent to proceed to trial because he "appeared to fully understand what was taking place in the courtroom and furthermore nothing presented to the court from his attorney ever indicated that the defendant lacked the competency to communicate and discuss all issues throughout the lengthy court proceedings." *Id.* at 99.

This was an eminently reasonable decision. Dr. Williams evaluated Pollard on November 4, 2014 (about two years before trial), and then *again* on March 31, 2017 (five months after trial). *See* 2014 Competency Evaluation at 1; 2017 Competency Evaluation at 2. In his 2014 report, Dr. Williams noted that "Pollard outlines an interesting story regarding his true name Neely Junior Johnson as compared to Kenneth Pollard," but he was clear on the central issue: Pollard, he found, understood the nature of the charges against him, the possible penalties, and the adversary nature of the proceedings. *See* 2014 Competency Evaluation at 5–7. Dr. Williams also concluded that Pollard understood how to behave appropriately in a courtroom, how to testify cogently (if he chose to do so), and how to assist his lawyer in preparing a defense. *Ibid.*

Likewise, in his 2017 report, Dr. Williams *again* found that Pollard was competent to proceed. Pollard, Dr. Williams said, understood the nature of the charges against him and could assist his lawyer with his defense. *See* 2017 Competency Evaluation at 4–5. In this second report—more than in the first—Dr. Williams addressed head-on Pollard's contention that he was Neely Johnson. In Dr. Williams's view, Pollard's insistence that he was the "real" Neely Johnson could be explained in one

14

of two ways: *Either* Pollard was malingering (by far the more likely scenario, according to Dr. Williams) *or* Pollard was suffering from an "extremely unusual" delusion. *Id.* at 5. Even in this latter scenario, though, Dr. Williams was clear that Pollard's "delusion" (if it truly was one) had *no effect* on Pollard's competence to stand trial. *See id.* at 4–5. These two expert evaluations were, standing alone, more than sufficient for the state trial court to determine, *nunc pro tunc*, that Pollard had been competent during his trial. *See Zern v. State*, 215 So. 3d 185, 186 (Fla. 1st DCA 2017) (holding that "opinions of Appellant's competency [taken] shortly before trial" were sufficient for a *nunc pro tunc* competency determination); *Trueblood*, 2021 WL 5041231, at *12 ("Although Dr. D'Errico's evaluation was done approximately one year before the trials at issue here, nothing has been shown or identified in the record to suggest that Trueblood's competency was lost in that year prior to trial. . . . Trueblood is not entitled to relief on his claim that his retrospective determination of competency deprived him of Due Process or that the decision of the state court was unreasonable.").

But our state judge had much more than two competency evaluations to support his conclusion. After all, the state judge who performed the *nunc pro tunc* competency evaluation was *the same* judge who had presided over Pollard's trial and sentencing. *See* Order Finding Defendant Competent [ECF No. 9-1] at 99 (signed by Judge Steven J. Levin); Trial Tr. Vol. I [ECF No. 10-1] at 1 ("This Cause came on for hearing before the Hon. Levin, Judge of the above court[.]"). Judge Levin confirmed during the *nunc pro tunc* competency hearing that he "remeber[ed] the case very well[.]" Competency Hr'g Tr. [ECF No. 10-4] at 5; *see also Trueblood*, 2021 WL 5041231, at *13 (finding that the trial court's observation of Trueblood's "conduct at his trials" was a valid basis for a *nunc pro tunc* competency finding). And, based on his own personal observations, Judge Levin recounted that Pollard "appeared to fully understand what was taking place in the courtroom" and was able "to communicate and discuss all issues throughout the lengthy court proceedings." Order Finding Defendant Competent [ECF No. 9-1] at 99. We won't second-guess Judge Levin's personal

15

observations of Pollard's behavior during the trial, especially since Pollard hasn't proffered his own "clear and convincing evidence" that Judge Levin's recollection was wrong. 28 U.S.C. § 2254(e)(1).[4]

Nor were Dr. Williams and Judge Levin alone in their views on Pollard's competency. Pollard's own lawyer, remember, *agreed* that Pollard was competent—both at trial and at sentencing. *See* Sentencing Day 2 Hr'g [ECF No. 10-3] at 24 ("[Defense Counsel:] I think. Judge, [Pollard] clearly manifested in the trial and again even here today that he is certainly competent, Judge."); *id.* at 47 ("[The Court:] With this in mind, it is my opinion . . . [that] Mr. Pollard is competent to proceed."). These observations about Pollard's competency—from the judge, the psychologist, and even the defense lawyer—provide strong support for the judge's finding. *See Dougherty*, 149 So. 3d at 679 (holding that "a nunc pro tunc evaluation [can] be done" when several different people "examined or observed the defendant contemporaneous with trial").

In short, the state trial court's retroactive determination that Pollard was competent during his trial was based on a reasonable determination of the facts and a reasonable application of federal law. *See Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 482 (11th Cir. 2012) ("The October 1998 competency evaluations, the transcripts taken from (and the evidentiary hearing testimony regarding) the March 2000 guilty plea and penalty phase proceedings, and the state court's 2005 competency finding crediting the court-appointed experts who found Lawrence competent and reported malingering . . . all support the [*nunc pro tunc*] competency determination.").

---

[4] Pollard doesn't suggest that, by delaying the sentencing and ordering a second competency evaluation, Judge Levin was indicating that he had "bona fide doubts" about Pollard's competency. *Cf.* Sentencing Day 1 Hr'g Tr. [ECF No. 10-2] at 28 ("I'm gonna go ahead and [o]rder an evaluation to make sure everything's—everything in the record is totally clear."). Nor could he: The record, after all, indicates that Judge Levin had *no* real doubts about Pollard's competency. *See* Sentencing Day 1 Hr'g Tr. [ECF No. 10-2] at 25 ("I don't think competency is the issue, let me put that clear on the record, I think he's totally competent, I think he totally understands[.]").

**EVIDENTIARY HEARING**

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on everything we've said—including and especially the presence of a robust trial and state-postconviction record—we don't think we'd benefit from any further factual development in this case.

**CERTIFICATE OF APPEALABILITY**

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Reasonable jurists wouldn't quibble with our assessment of the merits of Pollard's constitutional claim, so we'll **DENY** any request for a COA.

\* \* \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DENIED**, that a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida, on April 10, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Kenneth W. Pollard, *pro se*
      counsel of record